UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-10793-RGS

SIEMENS CORPORATION

v.

HEIDELBERG PHARMA AG, f/k/a WILEX AG

MEMORANDUM AND ORDER ON
CROSS MOTIONS FOR SUMMARY JUDGMENT

March 27, 2018

STEARNS, D.J.

This is a commercial real estate dispute in which plaintiff Siemens Corporation (Siemens) seeks to recover unpaid rent and costs from defendant Heidelberg Pharma AG (known at the time of the events in question, and referred to throughout this opinion, as Wilex AG). Siemens, the tenant under a lease to an office building located in Cambridge, Massachusetts, entered into a sublease agreement with Wilex AG's wholly-owned subsidiary, Wilex Inc., for which Wilex AG provided a guaranty. Wilex Inc. subsequently ceased to exist after Wilex AG decided to sell all of its subsidiary's shares to a third entity, Nuclea Biotechnologies (Nuclea). Nuclea failed to make timely rent payments and defaulted under the lease. Under threat of a summary process eviction, Nuclea abandoned the

premises. Siemens then brought this lawsuit, seeking to enforce the terms of the Wilex AG guaranty. The parties have filed cross motions for summary judgment and, for the reasons that follow, the court will <u>ALLOW IN PART</u> Siemens' motion for summary judgment, and will <u>DENY</u> Heidelberg Pharma/Wilex AG's cross-motion.

BACKGROUND

Siemens leased the office building in question, located at 100 Acorn Park Drive in Cambridge, Massachusetts, from TBCI, LLC, as Trustee of 100 Discovery Park Realty Trust. Siemens, in turn, as sublandlord, entered into a Sublease Agreement with Wilex Inc. (the Sublease). Wilex Inc., a wholly-owned subsidiary of Wilex AG (a German oncology-focused drug development company), was formed for the sole purpose of conducting business on the leased premises. Wilex AG signed a Guaranty that it would make good all of Wilex Inc.'s obligations under the Sublease. Both the Sublease and the Guaranty were signed on or about November 17, 2010, with the Sublease term running until January 31, 2016, subject to Wilex Inc.'s unassignable right and option to extend the Sublease to February 27, 2019.

Nuclea acquired all of the shares of Wilex Inc. on or about September 6, 2013, thus extinguishing any ownership interest that Wilex AG had in

Wilex Inc. (which ceased to exist after the merger). As a result of the merger, Nuclea became the subtenant under the Siemens Sublease.

Nuclea did not prove an ideal subtenant, falling behind on its rent payments and eventually defaulting. Although Siemens and Nuclea reached a Settlement Agreement, which included an Amendment of the Sublease, Nuclea promptly breached that agreement, causing Siemens to initiate a summary process proceeding in Cambridge District Court. There it obtained a judgment in the amount of $831,824.38.[1] Nuclea vacated the premises on August 1, 2016, and filed for bankruptcy shortly thereafter.

Thereafter, Siemens made a demand on Wilex AG under the Guaranty, seeking to recover the $831,824.38 judgment, plus decommissioning costs incurred by Siemens when Nuclea failed to remove all of its property from the leased premises. Wilex AG refused to make good, and this breach of contract lawsuit followed. The court authorized the parties to take discovery, and both have now moved for summary judgment.

DISCUSSION

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "no genuine dispute as to any

---

[1] As discussed later in this Order, Siemens contends that the Amendment of the Sublease never took effect because Nuclea failed to meet various conditions precedent to the entry into force of the modified Sublease.

3

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment must demonstrate to the court the absence of genuinely disputed material facts by reference to the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no dispute as to the underlying contractual documents at issue here, and "[d]ue to the relative simplicity of the issues usually involved, suits to enforce . . . guarantees are particularly appropriate for disposition by summary judgment*.*" *F.D.I.C. v. Villemaire*, 849 F. Supp. 116, 119 (D. Mass. 1994).

The crux of the dispute is whether Wilex AG's obligations under the Guaranty ended with the expiration of the original term of the Sublease, or whether Wilex AG is also obligated to cover the losses that Siemens incurred after Nuclea's default and up to its eviction on August 1, 2016. Wilex AG concedes that the merger of Wilex Inc. and Nuclea did not affect Wilex AG's underlying obligations under the Guaranty, and that it continued to be obligated for any non-performance and unpaid rent on the part of Nuclea, the surviving entity, for the original term of the Sublease, which expired January 31, 2016. *See* Def.'s Mem. in Opp'n to Pl.'s Motion for Summary Judgment, Dkt # 23, at 4.

The operative guaranty clause provides that "Guarantor unconditionally guarantees to Sublandlord . . . Subtenant's full and punctual

4

performance of its obligations under the sublease." *See* Guaranty, Section 1, Dkt # 18, Ex. H. The Guaranty further states that the liability of Wilex AG "will not be affected by the assignment or transfer of the Sublease or sublease of all or any part of the Premises described in the Sublease by [Wilex Inc.]." *Id.* Section 6. Finally, the Guaranty states that it "will apply to the Sublease, any extension or renewal of the Sublease as expressly set forth therein, any obligations, indemnities and representations made by [Wilex Inc.] in the Sublease which survive the Term of the Sublease and any holdover term following the Term of the Sublease." *Id.*

As the parties agree, under the plain wording of the Guaranty, Wilex AG's obligations were not affected by the assignment of the Sublease to Nuclea; however, Wilex AG's guaranty obligations were limited to "any extension or renewal of the Sublease as expressly set forth therein . . . and any holdover term following the Term of the Sublease." With respect to what was "set forth therein," the Sublease Agreement expressly provided that "the right and option to so extend the term shall be personal to the Subtenant executing the Sublease and such right and option may not be assigned or transferred to any other party or entity." *See* Sublease, Section 1 (b), Dkt #18, Ex. E.

Siemens appears to agree that, because the right to extend the Sublease was not assignable, had Nuclea and Siemens negotiated an extension of the Sublease beyond January 31, 2016, Wilex AG would be off the hook. However, Siemens contends that the Settlement Agreement and First Amendment of Lease negotiated between Siemens and Nuclea never became effective because Nuclea failed to satisfy several conditions precedent, including the delivery of a Letter of Credit and the payment of all moneys owed under the terms of the Settlement Agreement. *See* Pl.'s Mem. in Opp'n to Def.'s Motion for Summary Judgment, Dkt # 22, at 2-3. Because the new agreement, although contemplated, never became effective between Nuclea and Siemens, Siemens contends that Nuclea became a holdover tenant during the period of February 1, 2016 and August 1, 2016.[2] Siemens argues that because Wilex AG's obligation applied to "any holdover term following the Term of the Sublease," that term should be read broadly to include a

---

[2] More precisely, Siemens contends that Nuclea was a holdover tenant beginning December 3, 2015, when Siemens terminated the lease because of Nuclea's continued non-payment of the rent. However, for reasons explained below, the court does not find the precise date at which Nuclea became a holdover tenant to be dispositive. It is clear that the legal liability of the guarantor was pegged to the term of the original sublease, which expired on January 31, 2016, and the court does not read the contract as obligating Wilex AG to pay costs related to the holdover tenancy of a third-party assignee.

holdover term of a third-party assignee or a successor in interest to the subtenancy.

"Instruments of guaranty, like other contracts, are enforceable in accordance with their terms, and the rights of the parties must be ascertained from the terms of the guaranty instrument." *First Nat'l Bank of Boston v. Ibarra*, 47 Mass. App. Ct. 660, 662-63 (1999). When interpreting a provision of a guaranty, "every phrase and clause must be presumed to have been designedly employed, and must be given meaning and effect, wherever practicable, when construed with all the other phraseology contained in the instrument, which must be considered as a workable and harmonious means for carrying out and effectuating the intent of the parties." *Charles I. Hosmer, Inc. v. Com.,* 302 Mass. 495, 501 (1939).

The court ultimately concludes that the phrase "any holdover term following the Term of the Sublease" must be read both in the broader context of the section of the Guaranty in which it appears, Section 6, as well as with an eye toward the scope of the risk that that Wilex AG undertook to guarantee when it created a subsidiary to operate a business on the premises. Section 6 makes clear that the Guaranty applies only to "[1] any extension or renewal of the Sublease as expressly set forth therein, [2] any obligations, indemnities, and representations made by the Subtenant in the Sublease

7

which survive the Term of the Sublease and [3] any holdover term following the Term of the Sublease."  The first two clauses of this provision are specifically tied to the Sublease, which, with respect to liability incurred after January 31, 2016, declares that "the right and option to so extend the term shall be personal to the Subtenant executing the Sublease and such right and option may not be assigned or transferred to any other party or entity."

While it is possible to read the third clause – "any holdover term" – as applying to a holdover by a future assignee of the Sublease, notwithstanding the Sublease's express prohibition of an assignment of the right to extend, the court believes that the better reading is that Wilex AG undertook to guarantee its subsidiary's obligations under the Sublease.  Holding Wilex AG liable for "any holdover term" would only make commercial sense if it retained the ability to direct the conduct of the subtenant in the course of the holdover period (as would have been the case with its own subsidiary).  It has long been the rule in Massachusetts that "[w]here the language of the instrument is not clear beyond peradventure, an interpretation will commonly be adopted which will effectuate a reasonable and enforceable purpose to accomplish a practical and straightforward end."  *Agric. Nat'l Bank of Pittsfield v. Brennan*, 295 Mass. 325, 328 (1936); *accord J.A. Sullivan Corp. v. Com.*, 397 Mass. 789, 795 (1986) (noting that courts are to

adopt contractual readings that effect "a workable and harmonious means for carrying out and effectuating the intent of the parties.") (citation omitted). Because the court finds that the provision governing holdover periods is subject to two interpretations – either that it governs a holdover by *any* future subtenant, or *any* period of holdover by Wilex Inc., the subsidiary – the court will apply the interpretation that most sensibly accomplishes the parties' likely intentions.

Here, the non-assignability of the right to extend the Sublease, as Wilex AG argues, had clear benefits for both sides. While Wilex AG could assign its subsidiary's interest to a third party of which Siemens did not approve, it could not further transfer the right to extend the Sublease by an additional three years. Similarly, Wilex AG would not be obligated if the third-party assignee – over which Wilex AG no longer would have any control – negotiated a new sublease with Siemens on terms that Wilex AG, if it had been party to the negotiations, would have found unfavorable. Furthermore, if Wilex AG were to assign its subsidiary's interest to a third entity that failed to make rental payments (as happened here), Wilex AG would continue to be liable under the Guaranty for the term of the original Sublease (as it concedes is the case), ensuring that Siemens would be protected for the term of the Sublease for which it originally bargained. In other words, holding Wilex

AG's unconditional guaranty to the durational terms of the original Sublease ensured that Wilex AG could not avoid liability altogether by simply selling its stake in Wilex Inc.

However, all of the above is premised on Wilex AG having control over its subsidiary. By contrast, with respect to the issue of the holdover tenancy, Wilex AG had no control over Nuclea. Siemens, on the other hand, being on notice that Nuclea was not a reliable subtenant, could have declined to enter negotiations over an Amendment of Sublease. Moreover, it could have pursued eviction proceedings in December of 2015 and January of 2016, and recovered all of the unpaid rent that was then due from Wilex AG under the Guaranty. Siemens, for whatever reasons, allowed Nuclea to remain on the premises. It took the risk and it would be unfair to shift the consequences of its bad gamble to Wilex AG.

The holdover by the assignee, in other words, was not a risk that Wilex AG undertook to insure on behalf of its subsidiary. *See Caldor Inc. v. Mattel, Inc.*, 817 F. Supp. 408, 412 (S.D.N.Y. 1993) (noting that "a guarantor is discharged from its obligations under the Guarantee if the entity whose debts are guaranteed undergoes a change which dramatically and significantly alters the nature of the risk originally undertaken by the guarantor.").

The court is of the view that Wilex AG's guaranty obligations ended with the expiration of the term of the original Sublease on January 31, 2016. It therefore <u>GRANTS</u> summary judgment to Siemens only insofar as it seeks recovery from Wilex AG for the unpaid rent and liabilities incurred by Nuclea up to and including that date. The various invoices offered by Siemens indicate that Nuclea owed it $532,708.28 between September 2015 and January 31, 2016, in rent, utilities, and parking charges, as well as late fees. *See* Dkt # 18, Ex. W. Nuclea, in turn, made three payments to Siemens between August 1, 2015 and January 31, 2016, totaling $110,000. Deducting those payments from the total owed under the Sublease, Wilex AG's obligations under the Guaranty total $422,708.28. Under the terms of the Guaranty, paragraph 10, Wilex AG is also responsible for reasonable attorneys' fees and costs incurred "in connection with the enforcement of this Guaranty." *See* Guaranty, Section 10, Dkt # 18, Ex. H.

The parties' remaining arguments to reduce (or enhance) the damages are unavailing. Wilex AG argues that it should be entitled to have this amount offset by payments made by Nuclea *after* January 31, 2016, which Nuclea apparently made in partial satisfaction of its burgeoning debt. However, since these payments were for use and occupancy, rather than for rent past due, Wilex AG is not entitled to an offset. Finally, because the court

sees no basis for holding Wilex AG liable for the holdover tenancy of a party over which it had no control, it concludes that Wilex AG is not responsible for the decommissioning and eviction costs.

ORDER

For the foregoing reasons, the court <u>ALLOWS IN PART</u> Siemens' Motion for Summary Judgment and <u>ORDERS</u> Wilex AG to pay Siemens the sum of <u>$422,708.28</u>. Siemens is further directed to file, within fourteen (14) days from the date of this order, an affidavit and memorandum documenting its request for reasonable attorneys' fees under the terms of the Guaranty, together with a proposed form of Final Judgment. Wilex AG's Motion for Summary Judgment is <u>DENIED</u>, and Siemens' Motion for Summary Judgment is <u>DENIED</u> insofar as it seeks recovery for rent and liabilities incurred by Nuclea after January 31, 2016.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE